**Richard V. PAULSON; Glorialee Paulson, individually and as trustees of Richard V. Paulson Family Trust and Glorialee Paulson Family Trust, Plaintiffs–Appellees,**

v.

**DEAN WITTER REYNOLDS, INC., a Delaware corporation; American Insurance Company, a California corporation; Richard Allen; Robert H. Kehrli, Defendants–Appellants.**

No. 89–35213.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1990.

Decided June 6, 1990.

Mildred J. Carmack, Thomas V. Dulchich, Schwabe, Williamson & Wyatt, Portland, Or., for defendants-appellants.

David J. Sweeney, Brownstein, Rask, Sweeney, Kerr, Grim & Desylvia, Portland, Or., for plaintiffs-appellees.

Before BROWNING, ALARCON and KOZINSKI, Circuit Judges.

ALARCON, Circuit Judge:

Dean Witter Reynolds, Inc., American Insurance Company, Richard Allen, and Robert H. Kehrli (Dean Witter) appeal from the district court's denial of their motion to compel arbitration of the Richard V. Paulson Family Trust's and the Gloria-lee Paulson Family Trust's claims for violation of the federal securities laws.

## PERTINENT FACTS

In the summer of 1985, Richard V. Paulson and Glorialee Paulson (the Paulsons) sought investment advice on behalf of themselves and as trustees of the Richard V. Paulson Family Trust and the Glorialee Paulson Family Trust (the Family Trusts) from Dean Witter.

On October 10, 1985 the Paulsons entered into an "Active Assets Account Agreement" with Dean Witter. This agreement allowed Dean Witter to trade on margin for the Paulsons on their individual account. That agreement contained the following arbitration clause:

**Arbitration of Controversies.** I agree and you agree by carrying my account that all controversies which may arise between us concerning any transactions or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date below, shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc. or the American Arbitration Association or any other arbitration facility provided by any other exchange, as I may elect. If I do not make such an election by registered mail addressed to you at your office within five (5) days after receipt of notification from you requesting such election, then I authorize you to make such election for me. Any arbitration proceedings

between us shall be before at least three arbitrators. The award of the arbitrators or of a majority of them shall be final. Judgment upon the award rendered may be entered in any state or federal court having jurisdiction.

This agreement to arbitrate does not apply to any controversy between us for which a remedy exists pursuant to a right of action under the federal securities laws, unless you and I agree to arbitration after the date the controversy arises. Then, if we jointly agree to arbitrate, the terms of the agreement to arbitrate shall be applied.

Also on October 10, 1985 the Paulsons, on behalf of the Family Trusts, entered into two "Options Trading Agreements" (the options agreements) with Dean Witter. Each of these options agreements contains the following arbitration clause:

Any controversy between us arising out of or relating to the agreement or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Arbitration Association, the Board of Arbitration of the New York Stock Exchange, the American Stock Exchange, the Chicago Board Options Exchange or the National Association of Securities Dealers, Inc., as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then I authorize you to make such election in my behalf.

In addition, each of the options agreements contains a clause stating that all conflicts between the Options Trading Agreements and other agreements shall be resolved in favor of the Options Trading Agreements:

All other agreements existing between us or hereafter made which, by their terms apply to all accounts of mine with you, shall be applicable to my options account or accounts where they are not in conflict with this agreement. Should a conflict exist it shall be resolved in favor of this agreement. Otherwise, the provi-

sions of each agreement shall be applicable.

At the time the parties entered into the Options Trading Agreements, SEC Rule 15c2–2 was in effect. SEC Rule 15c2–2 provided:

It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

17 C.F.R. § 240.15c2–2 (1987) (rescinded October 15, 1987, 52 Fed.Reg. 39.216 (1987)). SEC Rule 15c2–2 was premised on the validity of *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held that agreements to arbitrate claims under the Securities Act of 1933 are unenforceable. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 234 n. 3, 107 S.Ct. 2332, 2341 n. 3, 96 L.Ed.2d 185 (1987).

Dean Witter invested the Family Trusts' funds in options and in limited partnership interests in an oil and gas limited partnership. Between January 1987 and October 1987, the Family Trusts suffered substantial losses on both types of investments. On July 29, 1988, the Paulsons, on behalf of themselves and the Family Trusts, filed a complaint for monetary damages, alleging claims under the federal securities laws, Oregon securities laws, and Oregon common law. All losses alleged in the complaint were sustained by the Family Trusts.

Dean Witter filed a motion to compel arbitration on September 1, 1988. On December 20, 1988, the district court granted Dean Witter's motion, ordered arbitration of all claims, and dismissed the action without prejudice. On January 6, 1989, the Paulsons filed a motion for reconsideration of the district court's order compelling arbitration of the Family Trusts' federal securities claims for losses from option trading, in light of recent Ninth Circuit authority. The Paulsons did not seek reconsideration

of the district court's order compelling arbitration of the Family Trusts' state securities and common law claims. On March 6, 1989, the district court granted the Paulsons' motion for reconsideration, concluding that the Family Trusts' federal securities claims for losses from options trading were not arbitrable. *Paulson v. Dean Witter Reynolds, Inc.*, 708 F.Supp. 1163, 1167 (D.Or.1989). Dean Witter timely appealed.

## DISCUSSION

■ The Paulsons contend that they did not agree to arbitrate the Family Trusts' federal securities claims. The Paulsons also assert that we must presume, as an implied-in-law condition of the agreement, that the parties incorporated SEC Rule 15c2–2 into the Family Trusts' options contracts. At the time of the formation of the contract, SEC Rule 15c2–2 prohibited the arbitration of federal securities claims. Therefore, the Paulsons argue, controversies regarding compliance with federal securities laws are excluded from arbitration. We review decisions regarding the validity and scope of arbitration clauses *de novo*. *Gooding v. Shearson Lehman Bros., Inc.*, 878 F.2d 281, 283 (9th Cir.1989).

## I. Arbitrability of the Paulsons' Federal Securities Claims

■ Parties may arbitrate claims under the Securities Act of 1933, *Rodriguez de Quijas v. Shearson/American Express, Inc.*, — U.S. —, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989), and the Securities Exchange Act of 1934, *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238, 107 S.Ct. 2332, 2343, 96 L.Ed.2d 185 (1987). The combined effect of these cases was to overrule *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held that predispute agreements to arbitrate claims under the Securities Act were unenforceable. *Id.* at 434–35, 74 S.Ct. at 186. As a result, a dispute regarding federal securities transactions is arbitrable unless the parties expressly excepted such controversies from the scope of the arbitration agreement. *Gooding v. Shear-*

*son Lehman Bros., Inc.*, 878 F.2d at 283, 284 n. 1.

## II. Enforceability of the Agreement to Arbitrate

Our threshold inquiry is to determine whether the written agreement shows that the parties agreed to arbitrate any dispute under the federal securities laws concerning Dean Witter's options trading on the Family Trusts' account. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir.1988). Under the Federal Arbitration Act "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (footnote omitted). The Federal Arbitration Act, however, does not require parties to arbitrate when they have not agreed to do so, "nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (citations omitted). Thus, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).

The Paulsons first argue that the Active Assets Account Agreement governs this dispute over the Family Trusts' losses from trading on the options accounts. They seek to apply to this dispute, the Active Assets Account Agreement's arbitration clause which expressly excludes federal securities claims from arbitration.

■ We must look to the language used in the Options Trading Agreements to determine the intent of the parties at the time these contracts were executed. The language used in the Paulsons' Active Assets Account Agreement has no bearing on the

intent of the parties at the time of the execution of the Family Trusts' Options Trading Agreements.

In *Van Ness Townhouses v. Mar Industries Corp.*, we found that the language of the agreement between the parties excluding from arbitration controversies for which "a remedy may exist pursuant to an expressed or an implied right of action under certain of the federal securities laws" clearly demonstrated the parties' intention *not* to arbitrate such claims. 862 F.2d at 757. In the instant matter, the Paulsons have failed to carry their burden of demonstrating that the parties did not intend to be bound by the unconditional arbitration clauses in the Options Trading Agreements in resolving controversies regarding alleged violations of the federal securities laws. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 109 S.Ct. at 1921 (a party seeking to avoid arbitration has the burden of showing that an arbitration clause is unenforceable). The parties clearly expressed their intention to arbitrate "[a]ny controversy" arising between them concerning the Options Trading Agreements. Accordingly, the unconditional arbitration clauses are applicable to this controversy between the Family Trusts and Dean Witter arising under the federal securities laws.

The Paulsons next assert that, even if the language of the Options Trading Agreements can be construed to include the arbitration of controversies concerning federal securities claims, the arbitration clauses of the Options Trading Agreements are unenforceable. Citing *Wood v. Lovett*, 313 U.S. 362, 61 S.Ct. 983, 85 L.Ed. 1404 (1941), and *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754 (9th Cir. 1988), the Paulsons contend that the parties must be presumed to have incorporated the law existing at the time of formation into their agreements. They argue that the language "[a]ny controversy" must be construed in light of SEC Rule 15c2–2, which prohibited agreements to arbitrate federal securities claims when the contract was executed. In support of this argument, the Paulsons rely on the Supreme

Court's statement in *Wood v. Lovett*, 313 U.S. 362, 61 S.Ct. 983, 85 L.Ed. 1404 (1941), that " 'the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.' " *Id.* at 370, 61 S.Ct. at 987 (quoting *Home Building & Loan Ass'n. v. Blaisdell*, 290 U.S. 398, 429, 54 S.Ct. 231, 237, 78 L.Ed. 413 (1934)).

*Wood v. Lovett* is inapplicable to the issue before us. In *Wood*, the appellants purchased land at a tax sale. Under prevailing Arkansas law, a purchaser at a tax sale gained valid title to land, notwithstanding any irregularities in the assessment or collection of taxes against the original owner. *Id.* 313 U.S. at 365, 61 S.Ct. at 984. The law was subsequently repealed. *Id.* The appellee, who had purchased the land from the original owner after the tax sale, then brought suit against the appellants to quiet title. *Id.* The Supreme Court held that retroactive application of the change in the law to void the purchasers' titles would be contrary to the State's obligation not to impair its contracts. *Id.* at 369–70, 61 S.Ct. at 986–87. The Court held that the purchasers were entitled to rely on the law in effect at the time of the acquisition of title. *Id.* at 368, 61 S.Ct. at 986.

In *Wood v. Lovett*, the retroactive application of the law would have defeated the intention of the parties. In the instant matter, application of the rule announced in *Rodriguez de Quijas* and *Shearson/American Express, Inc. v. McMahon*, upholding arbitration agreements regarding controversies involving federal securities claims, will carry out the expressed intention of the parties to arbitrate "[a]ny controversy." Thus, unlike the impact of the Arkansas law found inapplicable in *Wood v. Lovett*, the overruling of *Wilko* and the rescission of SEC Rule 15c2–2 does not result in the impairment of a contract containing an unconditional arbitration clause. In *Rodriguez de Quijas*, the court commented as follows, in upholding an agreement to arbitrate federal securities claims that was executed prior to the rescission of SEC Rule 15c2–2:

Today's ruling ... does not produce "substantial inequitable results," for petitioners do not make any serious allegation that they agreed to arbitrate future disputes relating to their investment contracts in reliance on *Wilko*'s holding that such agreements would be held unenforceable by the courts. Our conclusion is reinforced by our assessment that resort to the arbitration process does not inherently undermine any of the substantive rights afforded to petitioners under the Securities Act.

109 S.Ct. at 1922 (citation omitted).

The Paulsons' reliance on *Van Ness Townhouses* for the proposition that SEC Rule 15c2–2 was incorporated into the parties' agreements is similarly misplaced. In that case, we held that the parties expressly agreed *not* to arbitrate. 862 F.2d at 758. Thus, it was unnecessary for us to consider whether an agreement to arbitrate claims arising under the federal securities laws would be invalid under Rule 15c2–2. *Id.* at 759.

Finally, the Paulsons appear to argue that *Rodriguez de Quijas* and *Shearson/American Express, Inc. v. McMahon* cannot be applied retroactively. We disagree. In *Rodriguez de Quijas*, the Court stated that "the customary rule of retroactive application is appropriate here. Although our decision to overrule *Wilko* establishes a new principle of law for arbitration agreements under the Securities Act, this ruling furthers the purposes and effect of the Arbitration Act without undermining those of the Securities Act." 109 S.Ct. at 1922. Similarly, in *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282 (9th Cir. 1988), we rejected a challenge to the arbitration of state law claims for breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing based on SEC Rule 15c2–2. *Id.* at 288. We concluded that the rescission of SEC Rule 15c2–2 in light of *Shearson/American Express, Inc. v. McMahon* precluded its application to the arbitration agreement at issue, despite the fact that the Rule was in effect at the time of the contract's formation. *Id.*

The rescission of SEC Rule 15c2–2 has been given retroactive effect by other courts in claims arising under the Securities Exchange Act of 1934. *See Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir.1989) ("Because the SEC has rescinded Rule 15c2–2, we reject Jeske's argument that that rule rendered the arbitration clause null and void."); *Adrian v. Smith Barney, Harris Upham & Co., Inc.*, 841 F.2d 1059, 1062 (11th Cir.1988) ("[W]hatever effect Rule 15c2–2 may have had before its rescission, it can no longer be used as a defense to arbitration."); *Villa Garcia v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 833 F.2d 545, 547–48 (5th Cir.1987) (applying rescission of 15c2–2 retroactively); *Iacono, M.D., Inc. v. Drexel Burnham Lambert, Inc.*, 715 F.Supp. 18, 22–23 (D.R.I. 1989) (same). *But see Coffey v. Dean Witter Reynolds, Inc.*, 891 F.2d 261, 265 (10th Cir.1989) (relying on parties' reasonable expectations under SEC Rule 15c2–2 to "reject those cases which, by retroactive application of Rule 15c2–2's rescission, have immunized brokers from responsibility for possible violations of the rule while it was in effect"); *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 734 (3rd Cir. 1989) (refusing to apply rescission of SEC Rule 15c2–2 retroactively in the face of contractual language expressly excluding federal securities claims from arbitration). We find the cases applying the rescission of SEC Rule 15c2–2 retroactively to be persuasive and consistent with the Supreme Court's decision in *Rodriguez de Quijas*.

## CONCLUSION

The district court's order denying arbitration on the Family Trusts' federal securities claims is vacated. We remand with directions to enter an order requiring arbitration of the federal securities claims.

VACATED and REMANDED with directions.