925 F.2d 1136
 59 USLW 2544, Fed. Sec. L. Rep. P 95,786,
RICO Bus.Disp.Guide 7701
 THREE VALLEYS MUNICIPAL WATER DISTRICT; City of Lawndale;
City of San Marino, City of Palmdale; Community
Redevelopment Agency of the City of Palmdale, Community
Redevelopment Agency of the City of Maywood, Plaintiffs-Appellees,
v.
E.F. HUTTON & COMPANY, INC., David J. Lane; Todd Melillo,
Defendants-Appellants.
THREE VALLEYS MUNICIPAL WATER DISTRICT, a municipal water
district; City of Lawndale, a municipal corporation; City
of San Marino, a municipal corporation; City of Palmdale, a
municipal corporation; The Community Redevelopment Agency
of the City of Palmdale, a public body, corporate and
politic; Community Redevelopment Agency of the City of
Maywood, a public body, corporate and politic, Plaintiffs-Appellants,
v.
E.F. HUTTON & COMPANY, INC., a Delaware corporation; E.F.
Hutton & Company, Inc.; Shearson Lehman Hutton Inc., a
Delaware corporation; First Investment Securities, Inc., an
Arkansas corporation; William E. Parodi, Sr.; Frederick W.
Parodi; David J. Lane; Todd Melillo; William F. Smith;
Ed Oritz, Defendants-Appellees.
 Nos. 89-55138, 89-55664.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 3, 1990.
Decided Feb. 5, 1991.
 
 William W. Wynder and Mark Smith Flynn, Rutan & Tucker, Costa Mesa, Cal., for plaintiffs-appellees-appellants.
 Jeffrey L. Friedman, Shearson Lehman Brothers, Inc., Office of the Gen. Counsel, New York City, for defendants-appellants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON, REINHARDT and HALL, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 On March 31, 1988, plaintiffs filed an action against E.F. Hutton & Co. ("Hutton") alleging that, as a result of Hutton's wrongful conduct, plaintiffs lost over $8 million on their investment accounts. The district court granted Hutton's motion to compel arbitration of plaintiffs' claims based on RICO and state law violations, but denied the motion with respect to plaintiffs' federal securities law claims. The plaintiffs appeal the court's order compelling arbitration on their RICO and state law claims while Hutton appeals the portion of the order denying arbitration on plaintiffs' federal securities law claims. We reverse and remand.
 
 I. BACKGROUND
 
 2
 In September 1986, the cities of Lawndale, San Marino, and Palmdale, and the Palmdale Redevelopment Agency ("Palmdale RDA") opened securities accounts with E.F. Hutton & Company, Inc. Hutton is the predecessor to Shearson Lehman Hutton, Inc.[1] In November 1986, Three Valleys Municipal Water District ("Three Valleys") also opened a securities account with Hutton.
 
 
 3
 When they opened their securities accounts, each plaintiff entered into a Client Agreement with Shearson. The Client Agreements entered into by Lawndale, San Marino, Palmdale, and Palmdale RDA were each executed by Clarence Raymond Wood, who worked in various financial capacities for those entities. The Client Agreement entered into by Three Valleys was executed by Muriel F. O'Brien, the President of its Board of Directors. Each client agreement contained the following language:ARBITRATION AGREEMENT
 
 
 4
 It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws.
 
 
 5
 The undersigned agrees, and by carrying an account for the undersigned [Shearson] agrees, that except as inconsistent with the foregoing sentence, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.
 
 
 6
 On March 31, 1988, Lawndale, San Marino, Palmdale, Palmdale RDA, and Three Valleys (collectively "plaintiffs") filed their first amended complaint in the District Court for the Central District of California alleging that, as a result of Shearson's wrongful conduct, they lost a total of $8.279 million on their investment accounts.[2] Pursuant to Secs. 3 and 4 of the Federal Arbitration Act, Shearson filed a motion to compel arbitration and to stay the federal proceeding. The plaintiffs opposed the motion on the ground that the client agreements are void because the individual who signed the agreements, Clarence Wood, did not have authority to bind plaintiffs.[3] Plaintiffs also argued that, even if they were bound to the client agreements, the arbitration clauses contained in such agreements did not cover claims arising under the federal securities law.
 
 
 7
 On January 11, 1989, the district court entered an order granting in part and denying in part Shearson's motion to compel arbitration. The district court held that (1) the question whether the signatory, Clarence Wood, had authority to bind plaintiffs should be submitted to an arbitrator; (2) plaintiffs' claims under Sec. 10(b) of the Exchange Act and Sec. 12(2) of the Securities Act are not arbitrable; and (3) that plaintiffs' claims under RICO and state law are arbitrable.
 
 
 8
 Shearson appeals the portion of the district court's order denying the motion for a stay and refusing to compel arbitration of the plaintiffs' federal securities law claims. Shearson's notice of appeal was timely filed on January 10, 1989. We have jurisdiction over the appeal pursuant to 9 U.S.C. Secs. 15(a)(1)(A) & 15(a)(1)(B).
 
 
 9
 Plaintiffs filed a petition for permission to appeal the portion of the district court's order compelling arbitration pursuant to 28 U.S.C. Sec. 1292(b). An order directing arbitration is not ordinarily appealable. See 9 U.S.C. Sec. 15(b)(2). The district court, however, certified the portion of its order directing arbitration for immediate interlocutory appeal. On June 22, 1989, we granted plaintiffs' request to appeal under 28 U.S.C. Sec. 1292(b). On that same day, plaintiffs perfected their appeal pursuant to Fed.R.App.P. 5(d). Thus, this court now has before it all issues regarding the arbitrability of the underlying dispute.
 
 II. DISCUSSION
 
 10
 In its January 11, 1989 order, the district court directed arbitration on plaintiffs' RICO and state law claims, but refused to direct arbitration on plaintiffs' claims under Sec. 10(b) of the Exchange Act and Sec. 12(2) of the Securities Act. There are two issues in this appeal. First, the plaintiffs' contend that the Client Agreements containing the arbitration clauses are void because the signatory did not have authority to bind the plaintiffs. They argue that the district court erred in determining that the threshold issue whether the Client Agreements bind the plaintiffs must be decided by an arbitrator, rather than the district court. Second, assuming plaintiffs are bound to the contracts--and Three Valleys does not deny that it is--Shearson contends that the district court erred in ruling that plaintiffs' claims under Sec. 10(b) of the Exchange Act and Sec. 12(2) of the Securities Act are not arbitrable.
 
 
 11
 "This court reviews decisions regarding the validity and scope of arbitration clauses de novo." First Investors Corp. v. American Capital Fin. Serv., Inc., 823 F.2d 307, 309 (9th Cir.1987).
 
 A.
 
 12
 Plaintiffs opposed Shearson's motion to stay the federal proceeding and to compel arbitration on the ground that the Client Agreements containing the arbitration clauses are void because the individual who signed the agreements, Clarence Wood, did not have authority to bind the plaintiffs. The district court held that the question whether plaintiffs are bound to the Client Agreements must be decided by the arbitrators. We need not address whether Wood had authority to bind the plaintiffs; rather, the issue before this court is who decides whether plaintiffs are bound to the contracts--an arbitrator or the district court.
 
 
 13
 Federal law preempts state law on issues of arbitrability. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Under the Federal Arbitration Act ("Act"), 9 U.S.C. Secs. 1-15, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. But "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citing Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), and Steelworkers v. American Mfg. Co., 363 U.S. 564, 570-71, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403 (1960)). Thus, "as with any contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).
 
 
 14
 Shearson contends that Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), controls the threshold issue of who determines whether plaintiffs are bound to the arbitration agreements. In Prima Paint, the parties entered into a contract containing an arbitration clause which provided that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration." Id. at 398, 87 S.Ct. at 1803. Prima Paint later filed suit seeking rescission of the contract on the ground that Flood & Conklin had fraudulently represented that it was solvent and able to perform its contractual obligations, when in fact it was insolvent. Flood & Conklin sought to submit the issue of fraudulent inducement to contract to the arbitrators pursuant to the contract, and moved the district court for a stay pending arbitration.
 
 
 15
 The Court held that, under the Federal Arbitration Act, 9 U.S.C. Sec. 1-15, whether there was fraud in the inducement of the contract should be decided by an arbitrator and not by the district court. The Court explained that under Sec. 4 of the Act, a federal court is instructed to direct arbitration "once it is satisfied that 'the making of the agreement for arbitration ... is not in issue.' " Id. at 403, 87 S.Ct. at 1806.
 
 
 16
 Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the "making" of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that in passing upon a Sec. 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.
 
 
 17
 Id. at 403-04, 87 S.Ct. at 1806.
 
 
 18
 Under this analysis, a federal court may consider a defense of fraud in the inducement of a contract only if the fraud relates specifically to the arbitration clause itself and not to the contract generally. Furthermore, though Prima Paint involved a charge of fraud in the inducement of the contract, the rationale of Prima Paint extends to attempts to rescind contracts on other grounds. See e.g., Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co., 774 F.2d 524, 529 (1st Cir.1985) (frustration of purpose and mutual mistake); Hall v. Prudential-Bache Sec., Inc., 662 F.Supp. 468, 471 n. 1 (C.D.Cal.1987) ("[c]laims concerning duress, unconscionability, coercion, or confusion in signing should be determined by an arbitrator"). The more difficult question is whether Prima Paint applies to the issue in this case, i.e., whether the signatory had authority to bind the plaintiffs to the agreement.
 
 
 19
 Shearson argues that Prima Paint extends to all challenges regarding the "making" of a contract as opposed to the making of an arbitration clause. This was the interpretation given Prima Paint by the court in Rhoades v. Powell, 644 F.Supp. 645 (E.D.Cal.1986):
 
 
 20
 The Prima Paint doctrine is not limited, however, to rescission based on fraudulent inducement, but extends to all challenges to the making of a contract: "The teaching of Prima Paint is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself. The basis of the underlying challenge to the contract does not alter the [Prima Paint ] principle."
 
 
 21
 Id. at 653 (emphasis added) (quoting Unionmutual Stock Life Ins. Co., 774 F.2d at 529).
 
 
 22
 We do not read Prima Paint so broadly. The plaintiffs in Rhoades and Unionmutual did not challenge the making of a contract, but sought to rescind a contract that admittedly existed. Despite the broad dicta in those cases suggesting that Prima Paint extends to "all challenges to the making of a contract," we read Prima Paint as limited to challenges seeking to avoid or rescind a contract--not to challenges going to the very existence of a contract that a party claims never to have agreed to. A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in any arbitration.
 
 
 23
 Under this view, Prima Paint applies to "voidable" contracts--those "where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract." Restatement (Second) Contracts Sec. 7 comment b (1981). If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is "voidable" because the parties have agreed to arbitrate the dispute. But, because an "arbitrator's jurisdiction is rooted in the agreement of the parties," George Day Constr. Co. v. United Bhd. of Carpenters, Local 354, 722 F.2d 1471, 1474 (9th Cir.1984); see also I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 399 (8th Cir.1986) (an arbitrator "has no independent source of jurisdiction apart from the consent of the parties"); Smith Wilson Co. v. Trading & Dev. Establishment, 744 F.Supp. 14, 16 (D.D.C.1990) ("arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration"), a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate.[4] Only a court can make that decision.
 
 
 24
 Ample case law supports this holding. See, e.g., Camping Constr. Co. v. District Council of Iron Workers, Local 378, 915 F.2d 1333, 1340 (9th Cir.1990) ("The court must determine whether a contract ever existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator."); National R.R. Passenger Corp. v. Boston & Maine Corp., 850 F.2d 756, 761 (D.C.Cir.1988) ("if there was never an agreement to arbitrate, there is no authority to require a party to submit to arbitration"); I.S. Joseph Co., 803 F.2d at 400 ("the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other"); Cancanon v. Smith Barney, Harris, Upham & Co., 805 F.2d 998 (11th Cir.1986) (defense of fraud in the factum is not arbitrable). In fact, there are at least four cases, under the Federal Arbitration Act, where a court has held that the question of whether a particular individual has authority to bind a party must be determined by the court, not by an arbitrator. See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir.1980); N & D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722 (8th Cir.1976); Smith Wilson Co. v. Trading & Dev. Establishment, 744 F.Supp. 14 (D.D.C.1990); Ferreri v. First Options, Inc., 623 F.Supp. 427 (E.D.Pa.1985).
 
 
 25
 Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir.1980), is directly on point. There the documents in question were signed by the production manager of the appellant. The appellant argued that the contracts were not binding on it because they were not signed by a corporate officer. "If the production manager did not have the actual or apparent authority to execute the contract, the corporation cannot be bound...." Id. at 55. The Third Circuit reversed the district court's order staying the federal court proceeding pending completion of arbitration. The court explained:
 
 
 26
 Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.
 
 
 27
 Id. at 54 (footnotes omitted).
 
 
 28
 Shearson argues that, notwithstanding the general principle that arbitration is proper only upon agreement of the parties, our opinion in Teledyne, Inc. v. Kone Corp., 892 F.2d 1404 (9th Cir.1990), requires that the dispute in this case over the existence of the contract be submitted to arbitration. In Teledyne, the plaintiff Teledyne brought a breach of contract action against the defendant Kone. Kone denied that a valid contract existed because the signed agreement was not "final," and sought to arbitrate the breach of contract dispute pursuant to the terms of the arbitration clause contained in the "non-final" agreement. Teledyne argued that Kone has no right to enforce the arbitration provision because Kone denied that the agreement containing the arbitration clause was a valid contract. We rejected Teledyne's argument. We held that, because Kone "attacked the contract as a whole without making an 'independent challenge' to the arbitration provision," id. at 1410, Kone did not waive its right to have an arbitrator determine whether the agreement was final and enforceable.
 
 
 29
 Teledyne is a rare case. In Teledyne, the plaintiff (1) asserted the validity of the underlying contract containing the arbitration clause by bringing a breach of contract action and (2) did not make an independent challenge to the arbitration clause. The plaintiff thus had no ground on which to repudiate the arbitration agreement. As we explained in Teledyne, to allow the plaintiff to circumvent arbitration in these circumstances by bringing its claims in federal court would lead to an absurd result:
 
 
 30
 The district court could grant Teledyne relief on the contract only if it finds that the 1986 Draft was finalized. But if the 1986 Draft were final and valid, the arbitration provision would be valid as well since it has not been the subject of any independent challenge. And if the arbitration provision were valid, Teledyne's claim would not belong in federal court in the first place.
 
 
 31
 Id. at 1410.
 
 
 32
 Moreover in Teledyne the parties did not dispute that they signed an agreement containing an arbitration provision, albeit labeled "draft agreement." The question was only as to the effect of the draft agreement. That was properly a matter for the arbitrator.
 
 
 33
 Teledyne does not apply here. Unlike the plaintiff in Teledyne, in this case the plaintiffs deny the existence of the contracts containing the arbitration provisions. By contending that they never entered into such contracts, plaintiffs also necessarily contest any agreements to arbitrate within the contracts. To require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the "first principle" of arbitration that "a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).[5]
 
 B.
 
 34
 The district court held that plaintiffs' claims under Sec. 10(b) of the Exchange Act and Sec. 12(2) of the Securities Act are not arbitrable. The district court ruled that predispute agreements to arbitrate claims under Sec. 10(b) of the Exchange Act are enforceable under Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 238, 107 S.Ct. 2332, 2343, 96 L.Ed.2d 185 (1987), but that such agreements to arbitrate claims under Sec. 12(2) of the Securities Act are not enforceable under Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The district court noted that McMahon "greatly undercut[s]" the holding of Wilko that predispute agreements to arbitrate Sec. 12(2) claims are enforceable. Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., No. 88-322, slip op. at 15 (C.D.Cal. Dec. 30, 1988). But the district court refused to direct arbitration on plaintiffs' Sec. 12(2) claims because "Wilko is still binding authority on this court until the Supreme Court decides otherwise." Id. The court also ruled that plaintiffs Sec. 10(b) claims are not arbitrable because it found that "at the time the parties entered into these agreements, they intended to exclude Sec. 10(b) claims from arbitration." Id. at 18-19.
 
 
 35
 Recent decisions, entered after the district court's December 30, 1988 Order, establish that predispute agreements to arbitrate federal securities law claims are enforceable. First, the Supreme Court in Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), overruled the holding in Wilko that predispute agreements to arbitrate claims under Sec. 12(2) of the Securities Act are unenforceable. Second, this court recently held that both Rodriguez de Quijas and McMahon should be applied retroactively. Paulson v. Dean Witter Reynolds, Inc., 905 F.2d 1251, 1256 (9th Cir.1990); see also Rodriguez de Quijas, 490 U.S. at 484, 109 S.Ct. at 1922; Conover v. Dean Witter Reynolds, Inc., 837 F.2d 867, 868 (9th Cir.1988). The combined effect of McMahon, Rodriguez de Quijas, and Paulson is to require parties to arbitrate their claims under Sec. 10(b) of the Exchange Act and Sec. 12(2) of the Securities Act "unless the parties expressly excepted such controversies from the scope of the arbitration agreement." Paulson, 905 F.2d at 1254.
 
 
 36
 Plaintiffs do not contest that predispute agreements to arbitrate Sec. 10(b) claims and Sec. 12(2) claims are now enforceable. Instead, they argue that, even if they are bound to the agreements, their federal securities law claims are not arbitrable "because they were expressly excluded from the scope of the arbitration clause which the defendants seek to enforce."[6] Plaintiffs contend that the following language excludes federal securities law claims from the agreement to arbitrate:
 
 
 37
 It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws.
 
 
 38
 When the parties executed the agreements, SEC Rule 15c2-2[7] prohibited predispute agreements to arbitrate federal securities law claims. Although Rule 15c2-2 was later rescinded,[8] plaintiffs contend that, because the law at the time the contracts were executed did not allow Shearson to compel arbitration of Sec. 12(2) claims, the contractual language cited above expresses the intent of the parties not to subject such claims to arbitration.
 
 
 39
 Van Ness Townhouses v. Mar Industries Corp., 862 F.2d 754 (9th Cir.1988), provides the best support for plaintiffs' argument. In Van Ness Townhouses, the arbitration clause provided that the "agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws." Id. at 756. The defendant admitted that it inserted the language cited above to comply with Rule 15c2-2. The court held that therefore "the parties understood and intended that certain [federal securities law] claims were not arbitrable." Id. at 757; see also Gooding v. Shearson Lehman Bros., Inc., 878 F.2d 281 (9th Cir.1989) (interpreting an identical arbitration agreement to the one in Van Ness Townhouses ); cf. Leicht v. Bateman Eichler, Hill Richards, Inc., 848 F.2d 130, 133 (9th Cir.1988) ("unequivocal language" in the arbitration clause gave appellant the right to litigate his federal securities claims).
 
 
 40
 Van Ness Townhouses does not determine the result here for two reasons. First, the language in Van Ness Townhouses unequivocally excluded arbitration of plaintiff's federal securities law claims. In contrast, the provision in this case merely places the parties on notice that the agreement does not waive any rights they may have under the federal securities laws that cannot be waived under such laws. The right to a judicial forum could properly be waived as of the time defendant sought arbitration. The most reasonable reading of the clause is that the parties wished to arbitrate whatever disputes they could lawfully arbitrate and therefore agreed to waive whatever rights to a judicial forum could lawfully be waived. Such a provision should be read expansively and we see no reason to freeze its scope as of the date of the execution of the contract.
 
 
 41
 Our approach is consistent with that of several district courts that have been called upon to interpret identical or virtually identical language. See Cadaval v. Dean Witter Reynolds, Inc., 703 F.Supp. 922 (S.D.Fla.1989); Dillard v. Cooper, Fed.Sec.L.Rep. (CCH) p 94,521, 1989 WL 103222 (W.D.Okla.1989); Ingels v. Painewebber, Inc., No. 88-2466, 1989 WL 47286, 1989 U.S. Dist. LEXIS 3319 (D.Kan.1989); see also Amodio v. Blinder, Robinson & Co., 715 F.Supp. 32, 36 (D.Conn.1989) (giving a clause identical to the one at issue in the present case as an example of language that would require arbitration).
 
 
 42
 Second, under the Federal Arbitration Act, 9 U.S.C. Sec. 1-15, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Because it is doubtful that the contractual language denies defendants the otherwise clear right to arbitrate their federal securities law claims, the clause should be interpreted in favor of arbitration.[9]
 
 III. CONCLUSION
 
 43
 We reverse and remand the district court's order staying the federal proceeding and directing arbitration of plaintiffs' RICO and state law claims (except as to Three Valleys). On remand, the district court must first determine whether the signatory had authority to bind the other plaintiffs to the agreements containing the arbitration clauses. In addition, we find that as to any plaintiffs which are bound to the agreements, the federal securities law claims are arbitrable and those plaintiffs have agreed to submit such claims to arbitration.
 
 
 44
 REVERSED AND REMANDED.
 
 
 45
 CYNTHIA HOLCOMB HALL, Circuit Judge, concurring and dissenting:
 
 
 46
 Although I concur in part II B of the opinion, I must dissent from part II A. If this case presented a matter of first impression, the majority's position would not be unreasonable. However, the issue is not novel and we are not free to resolve it as the majority proposes.
 
 
 47
 It is important to keep in mind the narrow nature of the issue in this case. All agree that if there is a contract, then the arbitrator has jurisdiction. On the other hand, all agree that if there is no contract then the district court has jurisdiction. The dispute is thus limited to the question of whether an arbitrator or the district court will make the threshold determination of whether a contract has been formed.
 
 
 48
 The majority holds that before an arbitration clause in a contract can bind a party to arbitrate the party must be given an opportunity to dispute the "very existence" of the contract in district court. The majority's view is the product of a powerful intuition. The majority strongly believes that "bootstrapping" should be avoided; a party should not be subjected to arbitration and excluded from court absent a prior judicial determination that the party has agreed to arbitration. See opinion at 1142 (citing AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). For "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." Id.
 
 
 49
 However, the concern that moves the majority is not the only policy consideration in this area of the law. There is a very strong federal policy in favor of arbitration. Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Id.
 
 
 50
 Moreover, since so many contract disputes concern the "making" of the contract, rather than its voidability, the potential scope of contract arbitration will be severely limited by a rule that requires a judicial determination that a contract exists before the arbitration clause of such a contract can be effective. Consider a number of illustrations. First, the question whether there is consideration for exchanged promises or performance goes to the "making" of a contract. For if there is no consideration, no contract has been formed. See E. Farnsworth, Contracts 39-105 (1982). Second, the question whether a purported contract is actually a contract or is a mere preliminary negotiation also goes to the "making" of a contract. See id. at 113-122 (1982). Finally, consider the instant case, in which an agent is said to have lacked authority to bind her purported principal. Again, this goes to the "making" of the contract. Thus, if disputes that concern the "making" of contracts must be litigated rather than subjected to arbitration, arbitration's potential as an alternative dispute resolution mechanism is substantially limited. As such, the majority's policy concern about bootstrapping is counterbalanced by the contradictory federal policy that arbitration of contract disputes is to be encouraged.
 
 
 51
 The majority, based on its concern about bootstrapping, concludes that the district court should determine whether a contract has been "made." Others, perhaps acting out of concern that the majority's rule would unduly limit the potential of arbitration, have reached different conclusions. Three controlling authorities instruct that disputes about whether a contract has ever been "made" are to be decided by the arbitrator: Congressional statute, Supreme Court precedent, and Ninth Circuit precedent. We cannot legitimately ignore these authorities.
 
 
 52
 Congress expresses its view in the Federal Arbitration Act ("the Act"). Section 4 of the Act provides that federal courts who would have jurisdiction over the contract dispute but for the arbitration provision shall enter orders compelling arbitration "upon being satisfied that the making of the agreement for arbitration ... is not in issue....". 9 U.S.C. Sec. 4 (emphasis added).
 
 
 53
 The Supreme Court interpreted Sec. 4 in Prima Paint v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Court held that a claim of fraud in the inducement to contract did not support district court jurisdiction under Sec. 4. Rather, the arbitrator should deal with the claim. The Court reasoned that, in light of Sec. 4's language, for a claim of fraud in the inducement to make the dispute non-arbitrable the claim must specifically relate to the arbitration clause itself, instead of merely impugning the contract generally. Id. at 402-04, 87 S.Ct. at 1805-06. The Court said:
 
 
 54
 arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and ... where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud.
 
 Id. at 402, 87 S.Ct. at 1805.[1]
 
 55
 In dissent, Justice Black asserted the very view now adopted by the majority in this case, that the statute cannot be interpreted so as to allow "bootstrapping." Justice Black argued that if a contract is fraudulently induced it is not enforceable, and any arbitration provision within it is therefore ineffective. See id. at 407, 425, 87 S.Ct. at 1807, 1817 (Black, J., dissenting). This view was necessarily rejected by the Prima Paint Court.
 
 
 56
 The majority seeks to distinguish Prima Paint on the grounds that the present case involves the question whether any agreement was ever reached, while Prima Paint involved the question whether an agreement was voidable due to fraud in the inducement to contract. As stated by the district court below:
 
 
 57
 Notwithstanding common law distinctions between "void" and "voidable" contracts, it is hard to see a difference between severing under federal law a facially applicable arbitration clause from an allegedly nonexistent contract and severing it from an allegedly fraudulently induced one.
 
 
 58
 In either case, no independent challenge is made to the arbitration clause itself. In both cases the contract is unenforceable.
 
 
 59
 Moreover, the Ninth Circuit has already considered whether Prima Paint extends to cases that turn on whether a contract has been "made." Teledyne, Inc. v. Kone Corp., 892 F.2d 1404 (9th Cir.1990).[2] We concluded that Prima Paint does apply, so that issues relating to the making of contracts are subject to arbitration. Id. at 1410-11. Despite the majority's intimations to the contrary, that Prima Paint formed the basis for Teledyne could not be clearer. We said:
 
 
 60
 The federal courts ... requir[e] that cases be submitted to arbitration unless there is a challenge to the arbitration provision which is separate and distinct from any challenge to the underlying contract. "The teaching of Prima Paint is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been a independent challenge to the making of the arbitration clause itself."
 
 
 61
 Kone has argued that the 1986 Draft was never finalized. It has attacked the contract as a whole without making an "independent challenge" to the arbitration provision. It has thus not waived its right to have an arbitrator determine whether the 1986 Draft was finalized.
 
 
 62
 Id. at 1410 (citations omitted). It is thus clear that in Teledyne this court held that, absent a specific challenge to the arbitration clause itself, a claim that a contract has never been made is arbitrable.
 
 
 63
 The majority attempts to distinguish Teledyne in two ways, neither of which is convincing. First, contrary to the majority's claim, it is evident from the opinion that the Teledyne court did not import into Sec. 4 an equitable rule that the party suing on a contract must submit to arbitration. And the Act contains no such requirement. Further, the equities of such a rule are far from apparent. For the very party who denied the existence of the contract was able to force the other party into arbitration.
 
 
 64
 The majority's second ground for distinguishing Teledyne is no more convincing. The claim, incredibly, is that there was no dispute in Teledyne as to whether a contract had been "made," because the parties admitted that they had signed something. One party said this something was a part of preliminary negotiations, and the other party said this something was a contract.
 
 
 65
 Of course there was a dispute in Teledyne as to whether a contract had been formed. If the signed paper was a mere negotiating instrument, then the contract that would have given a basis for arbitration never existed. For a mere negotiating instrument has no more effect than a paper signed by one without authority to bind his principal. Would a blurred scribble on a dinner napkin also satisfy the majority that a contract had unquestionably been executed? Thus, the issue in Teledyne, as in this case, was whether the contract, of which the arbitration clause was a part, had been formed. And Teledyne holds that absent a specific challenge to the arbitration clause this issue is for the arbitrator.
 
 
 66
 In short, the majority's stance is simply untenable. To evade the constraints of the three sources of authority just discussed the majority would import into 9 U.S.C. Sec. 4 a number of novel distinctions. The majority would first distinguish between "void" and "voidable" contracts, thereby severely limiting the types of contract disputes that may be brought before an arbitrator. The majority would next distinguish between cases in which the plaintiff seeks arbitration and cases in which the defendant seeks arbitration. The majority's final point is that arbitration is appropriate if anything has been signed, so long as not just anybody signed it. Rather than transform this area of the law into a morass of questionable distinctions, I would follow the commands of the statute and controlling authorities. I therefore respectfully dissent.
 
 
 
 [1]
 Besides Shearson Lehman Hutton, Inc., the defendants in this appeal are David J. Lane and Todd Melillo (collectively "Shearson"). Lane and Melillo were employed by Hutton as registered representatives during the period covered by the amended complaint
 
 
 [2]
 The Community Redevelopment Agency of the City of Maywood was also a named plaintiff in the first amended complaint, but is not a party to these consolidated appeals
 
 
 [3]
 This argument applies to Lawndale, San Marino, Palmdale, and Palmdale RDA--not Three Valleys. Therefore, with respect to section IIA of this opinion, the term "plaintiffs" does not include Three Valleys
 
 
 [4]
 Shearson argues that this holding has been rejected by the majority in Prima Paint. Shearson notes that Justice Black in his Prima Paint dissent made a similar argument with respect to the defense of fraudulent inducement, and it was rejected by the majority. 388 U.S. at 407, 87 S.Ct. at 1808 (Black, J., dissenting). But here Shearson seeks to apply Prima Paint one step further to a case where the plaintiffs contend that the parties have given the arbitrator no authority to hear any dispute. The Prima Paint majority did not address this question
 
 
 [5]
 Although this "first principle" of arbitration was set forth in cases involving federal labor law, see AT & T Technologies, 475 U.S. at 648, 106 S.Ct. at 1418, it applies with equal force to arbitration in non-labor cases pursuant to the Federal Arbitration Act. See I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 399 (8th Cir.1986); Smith Wilson Co. v. Trading & Dev. Establishment, 744 F.Supp. 14, 16 (D.D.C.1990); see also Commercial Metals Co. v. Balfour, Guthrie, & Co., 577 F.2d 264, 266 (5th Cir.1978) (the Federal Arbitration Act does not confer jurisdiction on arbitrators absent an agreement of the parties to arbitrate)
 
 
 [6]
 The district court agreed that plaintiffs could not be directed to arbitrate their Sec. 10(b) claims because such claims were outside the scope of the arbitration provision. But the district court did not decide whether the arbitration provision included plaintiffs' Sec. 12(2) claims because the court found that those claims were not arbitrable under Wilko
 
 
 [7]
 Rule 15c2-2 states, in pertinent part:
 (a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal Securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.
 
 
 [17]
 C.F.R. Sec. 240.15c2-2(a) (1987)
 
 
 [8]
 See Rescission of Rule Governing Use of Predispute Arbitration Clauses in Broker-Dealer Customer Agreements, Exchange Act Release No. 25034, [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 84,163 (Oct. 15, 1987)
 
 
 [9]
 Plaintiffs' argument is also contrary to the implicit holding of Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282 (9th Cir.1988). In Cohen, the plaintiffs executed a contract during the period in which Rule 15c2-2 was effective. The contract included an identical arbitration provision as the provision in this case. The plaintiffs argued that the provision was unenforceable because it would violate Rule 15c2-2. The court rejected this argument because Rule 15c2-2 had been rescinded. Id. The plaintiffs in Cohen apparently did not argue that federal securities law claims were not arbitrable because they fell outside the scope of the arbitration clause. Yet, enforcement of the arbitration agreement in Cohen implies that the provision covers federal securities law claims
 
 
 [1]
 The majority relies on a number of labor cases. See, e.g., AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). These cases are not predicated on the Federal Arbitration Act, on which both Prima Paint, discussed infra, and the instant case are based, but on the Labor Management Relations Act. Id. at 646 & n. 4, 106 S.Ct. at 1417 & n. 4; Camping Constr. Co. v. District Council of Iron Workers, 915 F.2d 1333 (9th Cir.1990). Prima Paint's construction of the Federal Arbitration Act thus controls this case, rather than any general principles enunciated in these labor cases
 
 
 [2]
 The circuits are currently split on the issue in this case. Compare Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir.1980) (not arbitrable) with Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co., 774 F.2d 524, 528-29 (1st Cir.1985) (arbitrable unless there is a specific challenge to the arbitration clause). The cases from other circuits that the majority cites must of course yield to the Ninth Circuit precedent of Teledyne