**VIRGINIA CAROLINA TOOLS, INC., American Metal Industries, Inc., d/b/a American Metal Industry Wholesalers, and the Roi Group, Inc., Plaintiffs,**

**v.**

**INTERNATIONAL TOOL SUPPLY, INCORPORATED and Curtis Park, Defendants.**

**No. 3:92CV102-P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

June 23, 1992.

---

James P. McLoughlin, Jr., Neil C. Cooksey, Bradley E. Pearce, Moore & Van Allen, Charlotte, N.C., for plaintiffs.

Clifford R. Jarrett, Alice Carmichael Richey, Charles V. Tompkins, Jr., Kennedy Covington Lobdell & Hickman, Charlotte, N.C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on Plaintiffs' complaint and motion to compel arbitration, filed in the General Court of Justice, Superior Court Division, Mecklenburg County, North Carolina, on March 20, 1992.

The action was removed to this Court pursuant to 28 U.S.C. § 1441(a) in that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, this being an action between citizens of different states in which the amount in controversy, exclusive of costs and interests exceeds the sum of $50,-000.00.

The matter came on to be heard before this Court on June 19, 1992, in Charlotte, North Carolina.

The following matters are before the Court now:

The Plaintiffs seek an Order:

1. Compelling the Defendants to arbitrate the dispute, pursuant to 9 U.S.C. § 4.

2. Pending arbitration between the parties prohibiting the Defendants from disclosing, conveying or making any use whatsoever of any trade secrets of VCI, AMI, or ROI, including Plaintiffs' business plan and other plans for ITS disclosed to Defendants in connection with the proposed acquisition by VCI of ITS.

3. Prohibiting ITS and/or Park from selling or entering into any agreement to

sell any of ITS's stock or any of its assets, other than sales of inventory in the ordinary course of its business, pending resolution of the arbitration between the parties to this action.

The Defendants seek an Order:

Enjoining Plaintiffs from arbitrating the dispute between the parties and from using or revealing confidential or proprietary information of Defendants currently in possession of the Plaintiffs.

## BACKGROUND

On December 13, 1991 an option agreement in the form of a letter from the ROI Group, Inc. ("ROI") addressed to Mr. Curtis Park ("Park") of International Tool & Supply Co., Inc. ("ITS") was sent to Park at ITS. ROI was acting on behalf of Virginia Carolina Tools ("VCT"), a wholly owned subsidiary of American Metal Industries, a North Carolina corporation d/b/a American Metal Industry Wholesalers ("AMIW").

The letter offered to purchase selected assets and goodwill and assume certain selected liabilities of ITS ("Seller") subject to the warranties and representations of the common shareholders of ITS (Seller) on the terms and conditions set out in the letter.

On pages 4, 5, and 6 of the letter ("Option") appeared the following language pertinent to the matters before the Court:

Buyer agrees, in consideration for Seller and Shareholder providing this option, to expend, on a best efforts basis, such time effort and expenses as is required to consummate the transaction. In return, Seller and Shareholder agree to provide the Buyer with the exclusive right for 60 days (option period) from the date of execution of this agreement or before at Buyer's option, by Buyer's providing ten days written notice of exercise of option to Seller to consummate the transaction under the terms contained herein.

. . . .

Buyer's attorney will prepare an asset purchase agreement which will include such terms, conditions, covenants and warranties that would be customary and reasonable to Buyer and its financial institutions and investors in a transaction of this size and nature and which will be consistent with the terms contained herein. This agreement will also include such terms and conditions as are fair and reasonable to the Seller and Shareholder and consistent with the other terms of this agreement. Seller's attorney shall review the agreement. In the event that the parties cannot agree on the terms and conditions of a definitive contract reflecting those contained in this agreement, the parties agree to delay the closing and extend the term of this agreement until such time as the arbitrator, as discussed herein below, rules on those issues in dispute between the parties. The parties agree that any forms and/or conditions ruled on by the arbitrator will be hereby incorporated into this agreement and the definitive agreement as if same had been recited herein. If this agreement is not executed by Seller and received by Buyer within two weeks from the date hereof, it will be void and of no effect.

. . . .

Closing shall be anytime Buyer provides notice within the option period, at the office of Seller. Buyer shall provide ten days written notice of the date and time of closing. Seller represents it has all necessary consents, as well as that of its Board of Directors to enter into this transaction. Should any dispute arise between the parties they agree to seek resolution through the American Arbitration Association (AAA) which the parties agree shall have exclusive jurisdiction and venue in Charlotte, North Carolina and North Carolina laws shall apply. This arbitration will provide for both legal and equitable relief.

There is no dispute that:

1. the option agreement was signed by the Defendants on December 13, 1991, and contained a 60–day option period from the date of execution;

2. no letters of extension were exchanged between the parties; and,

3. the first documents for closing were sent by the Plaintiffs and received by the Defendants on March 1, 1992.

As the Court sees it, the controlling issue before the Court is whether or not there presently exists an agreement to arbitrate. The answer lies in whether the 60–day option agreement signed on December 13, 1991 was still in existence on March 1, 1992, when Park received the proposed closing documents.

However, the threshold question for the Court to decide is whether the existence of the option agreement and thus the arbitration agreement is for the Court or for the arbitrators.

## ANALYSIS

■ The duty to arbitrate is contractual in origin. Whether or not there is a contract in existence requiring the parties to arbitrate is for the Court. *AT & T Tech. Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Both parties have filed affidavits. The Defendant Park's affidavit indicates that Park emphasized to the Plaintiffs that:

... because ITS was losing money every month, it was very important to me that the sale close as soon as possible ... [Park aff. ¶ 7].

On the other hand, the second affidavit of R. Gary Ash, President of Allied Tools Division of VCT, ¶ 7 states in part:

However, Mr. Curtis Park, President and majority shareholder of ITS, represented to me and to other officers of VCT and AMI that the option to purchase ITS's assets was extended until the end of March, 1992 ...

Gerald L. Beiersdorf, Chairman and Operations Manager of VCT in his affidavit, ¶ 6, stated:

Based on the belief that Mr. Park intended to sell ITS's assets to VCT despite the fact that the Expiration Date had passed, VCT continued to sell merchandise to ITS at VCT's cost after February 11, 1992, the Expiration Date.

Michael Daspin, Chairman of ROI, and a director of AMI, filed an affidavit, ¶ 2 of which states:

Under the terms of the December 13, 1991 Option Agreement between AMI, VCT, International Tool Supply, Incorporated ("ITS") and Mr. Park, VCT's option to acquire ITS expired on February 11, 1992. In early 1992, John S. Magac and I had a telephone conversation with Mr. Park about the closing of the transactions contemplated by the Option Agreement. At that time, our due diligence investigation of ITS was behind schedule, in part, because Mr. Park and ITS had failed to provide VCT and ROI with the information needed to complete the due diligence investigation. Mr. Park, for himself and ITS, agreed during our conversation to extend the option period until the last day of March, 1992.

Thus, there is apparently a dispute as to whether the option was extended so that the option and consequently the Arbitration Agreement still exists. That is a question for the Court.

■ Even though a contract provides as here that should any dispute arise between the parties they agree to such resolution through the American Arbitration Association, the cases seem to hold that when a contract provides that it will expire on a date certain, then any dispute over whether the contract actually expired or was extended by the parties must be decided by the Court, rather than by the arbitrator. *Nat. R.R. Passenger Corp. v. Boston and Maine Corp.*, 850 F.2d 756 (D.C.Cir.1988).

■ In the case before the Court there was an unambiguous expiration date. That rebuts any presumption in favor of arbitration. *Liberty Univ. v. Kemper Sec. Group*, 758 F.Supp. 1148 (W.D.Va.1991).

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), cited by the Plaintiffs, has to do with whether a claim of fraudulent inducement of a contract containing a broad arbitration clause was for the arbitrators or the court. It had nothing to do with the termination or extension of a contract, but with the validity of the contract.

■ *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469 (9th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992), cited by Defendants, again concerned the validity of an arbitration agreement, not the question of whether the contract was still in existence.

*County of Durham v. Richards and Assoc. Inc.*, 742 F.2d 811 (4th Cir.1984) cited by Plaintiffs, concerned whether claims were timely filed under the contract which contained an arbitration clause that adopted the state-law statute of limitations as the time limit on making claims for arbitration. That is not the question before this Court. The question here is whether the option contract which included the arbitration provisions had expired after the termination date and thus terminating Defendants' duty to arbitrate.

In summary, the option contract, which included the arbitration clause, had a definite termination date, February 11, 1992. The question of whether it was extended, is for the Court, not the arbitrators.

Therefore, the Court will grant Defendants' motion for preliminary injunction, enjoining Plaintiffs from arbitrating the dispute concerning the duration of the option agreement which by its terms expired February 11, 1992.

*Plaintiffs' Motion for Injunctive Relief Enjoining Defendants From Selling ITS's Stock or Assets*

The Plaintiffs seek a preliminary injunction prohibiting ITS and/or Park from selling or entering into any agreement to sell any of ITS's capital stock or any of ITS's assets, other than sales of inventory in the ordinary course of business, pending outcome of the arbitration between the parties.

The Plaintiffs seek the preliminary injunction for the following reasons:

The acquisition of ITS was an integral part of the overall business plan of AMI to establish a regional wholesale distribution network for machine tools throughout the Southeast United States and to go public with the combined enterprise within five years. ITS's location in Tennessee is essential to this plan. If Defendants are permitted to sell ITS, Plaintiffs [sic] injuries will include:

—The loss of distributor agreements which ITS agreed to transfer to VCT pursuant to the Option Agreement that cannot reasonably be obtained from any other source, including distributor agreements for product lines that VCT does not currently have.

—Loss of sales. For example, in late February 1992, Allied prepared a bid on behalf of ITS and VCT that would have resulted in $200,000 in annual sales.

—The continued expense of paying the salaries and benefits of two sales representatives in eastern Tennessee, who were relocated in anticipation of consummating the transaction.

—Injury to VCT's reputation in the industry, including irreparable damage to Allied's relations with its vendors, and damage to VCT's ability to consummate future transactions.

—Loss of profits. Between January 24, 1992 and March 27, 1992, VCT sold in excess of $13,000 in merchandise to ITS at cost. These sales were made to keep ITS viable until the transaction could be completed.

—Loss of volume discounts from vendors.

Additionally, VCT's right to arbitrate will be meaningless if ITS is sold before the conclusion of the arbitration proceeding. Defendant Park has indicated that he has limited financial resources and that he would be unable to pay any damage award.

## DISCUSSION

■ The traditional standard for granting a preliminary injunction requires the Plaintiff to show that in the absence of its issuance the Plaintiff will suffer irreparable injury and that it has a reasonable probability of prevailing on the merits. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1977).

[7] In considering the injuries which the Plaintiffs allege they will suffer if Defendants are permitted to sell ITS the Court does not believe that a loss of distributor agreements which ITS agreed to transfer to VCT pursuant to the option agreement, nor the loss of sales, nor the expense of paying salaries and benefits of the sales representatives relocated in eastern Tennessee, nor the purported injury to VCT's reputation in the industry, nor the speculative loss of profits, nor the loss of volume discounts to vendors would constitute irreparable injury to Plaintiffs.

In *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991), the court said:

> The standard for preliminary injunctions is established in this Circuit by *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977). *Blackwelder* clarified that a hardship balancing test applies to determine the granting or denial of a preliminary injunction. *See L.J. By and Through Darr v. Massinga*, 838 F.2d 118, (4th Cir.1988), *cert. denied*, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989). Four factors must be considered:
>
> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
>
> (2) the likelihood of harm to the defendant if the requested relief is granted,
>
> (3) the likelihood that the plaintiff will succeed on the merits, and
>
> (4) the public interest.

*Massinga*, 838 F.2d at 120. The irreparable harm to the plaintiff and the harm to the defendant are the two most important factors. If, after balancing those two factors, the balance "tips decidedly" in favor of the plaintiff, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985), a preliminary injunction will be granted if "the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Blackwelder*, 550 F.2d at 195; *see Todd by Todd v. Sorrell*, 841 F.2d 87, 88 n. 2 (4th Cir.1988). As the balance tips away from the plaintiff, a stronger showing on the merits is required. *See Telvest, Inc. v. Bradshaw*, 618 F.2d 1029 (4th Cir. 1980).

As to the balance of harm test, if the Defendants were precluded by a preliminary injunction from disposing of their assets pending the resolution of this dispute by trial and then possibly in an arbitration proceeding, the Court could very well be condemning the Plaintiffs to insolvency. Therefore, the court believes the balance of harm test tips in favor of the Defendants. The Court will deny the Plaintiffs' motion for a preliminary injunction preventing the Defendants from selling any of ITS's assets.

*Injunctive Relief Restraining Plaintiffs and Defendants From Using or Disclosing Confidential or Proprietary Information Obtained From the Other.*

The Court understands that both parties are willing to submit to such an injunction at this time.

NOW, THEREFORE, IT IS ORDERED:

1. Plaintiffs' Motion to Compel Arbitration is *DENIED.*

2. Defendants' Motion for a Preliminary Injunction Enjoining Plaintiffs from arbitrating this dispute is *GRANTED.* The Plaintiffs and the American Arbitration Association shall not pursue any arbitration proceeding until such time as it has been determined by this Court whether the arbitration provisions in the option agreement between the parties dated December 13, 1991 are in effect.

3. The Defendants shall give security in the form of a bond in the amount of $25,000.00 with a corporate surety authorized to do business in the State of North Carolina. The said bond shall provide for the payment of such costs and damages as may be incurred or suffered by the Plaintiffs if they are found to have been wrongfully enjoined.

4. The Plaintiffs' Motion for a Preliminary Injunction prohibiting ITS and/or

Park from selling or entering into any agreement to sell any of ITS's stock or any of its assets, other than sales if inventory in the ordinary course of its business, pending outcome of the dispute between the parties, is *DENIED*.

5. Both the Plaintiffs and the Defendants are *ENJOINED* from disclosing, conveying, or making any use whatsoever of any trade secrets or confidential information obtained from the other, including but not limited to business plans or other plans for the operation of ITS pending the outcome of this dispute.