984 F.2d 113
 VIRGINIA CAROLINA TOOLS, INCORPORATED; American Metal
Industries, Incorporated, d/b/a American Metal
Industry Wholesalers; The Roi Group,
Incorporated, Plaintiffs-Appellants,
v.
INTERNATIONAL TOOL SUPPLY, INCORPORATED; Curtis Park,
Defendants-Appellees.
 No. 92-1772.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 29, 1992.
Decided Jan. 14, 1993.
 
 James Patrick McLoughlin, Jr., Moore & Van Allen, Charlotte, NC, argued (Joseph H. Nanney, Jr., Bradley E. Pearce, Moore & Van Allen, on the brief), for plaintiffs-appellants.
 Alice Carmichael Richey, Kennedy, Covington, Lobdell & Hickman, Charlotte, NC, argued (Clifford R. Jarrett, Kennedy, Covington, Lobdell & Hickman, on the brief), for defendants-appellees.
 Before PHILLIPS, NIEMEYER, and LUTTIG, Circuit Judges.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 This appeal presents the question whether a dispute over the duration of a written option agreement having a broad arbitration clause and a facially unambiguous termination date is for the court or the arbitrator. When the party seeking to exercise the option sought a preliminary injunction to compel arbitration of the dispute and for interim relief pending resolution of the dispute, the district court denied the motion and instead granted the opposing party's motion to enjoin arbitration pending judicial resolution of the dispute. We hold that the district court correctly decided that the duration issue was for it, not the arbitrator, and that it did not abuse its discretion in denying the motion for interim injunctive relief. Accordingly, we affirm its various interlocutory orders and remand for further proceedings.
 
 
 2
 * Appellants Virginia Carolina Tools, Inc. (VCT), American Metal Industries, Inc. (AMI), and the ROI Group, Inc. (ROI) contracted with appellees International Tool Supply, Inc. (ITS) and Curtis Park, its president, for a sixty-day exclusive option to purchase ITS's assets and assume certain of its liabilities.[1] The agreement consists of five pages and one attached schedule, beginning "[VCT].... is pleased to make the following offer ... on the following terms and conditions." Joint Appendix at 54. After three pages describing VCT's view of the current state of affairs and the desirable future, the agreement states
 
 
 3
 Buyer [VCT] agrees, in consideration for Seller [ITS] and Shareholder [Park] providing this option, to expend, on a best efforts basis, such time, effort and expense as is required to consummate the transaction. In return, Seller and Shareholder agree to provide the Buyer with the exclusive right for 60 days (option period) from the date of execution of this agreement or before at Buyer's option, by Buyer's providing ten days written notice of exercise of option to Seller[,] to consummate the transaction under the terms contained herein.
 
 
 4
 J.A. at 57. It then adds additional terms and conditions, including subsidiary promises, and contemplates VCT's attorney drawing an asset purchase agreement consistent with the option for ITS's approval. The text concludes with this broad arbitration agreement:
 
 
 5
 Closing shall be anytime Buyer provides notice within the option period.... Should any dispute arise between the parties they agree to seek resolution through the American Arbitration Association (AAA) which the parties agree shall have exclusive jurisdiction and venue in Charlotte, North Carolina and North Carolina laws shall apply. The arbitration will provide for both legal and equitable relief.
 
 
 6
 J.A. at 58.
 
 
 7
 As the quoted language reveals, the exclusive option provision of the contract expired by its terms on February 11, 1992, sixty days after execution of the option by the parties on December 13, 1991. The parties later disputed, however, whether the entire contract (and, specifically, its arbitration clause) expired or only the exclusivity clause. They also disputed whether the option agreement, including the exclusivity clause, was extended through the end of March in a February conference call involving E. Michael Daspin, chairman of ROI and a director of AMI, John Magac, vice-president of VCT, and Park. Park denied any extension. VCT countered by citing behavior of ITS and Park allegedly consistent with an extension of the exclusive option period.
 
 
 8
 Whatever the truth of the matter, delays unquestionably developed, and the parties unquestionably continued to negotiate after February 11. VCT now claims that the delays resulted from ITS's tardy provision of financial information to VCT; ITS, that they resulted from VCT's difficulty in securing financing. During the delays, financially troubled ITS borrowed money to stay afloat.
 
 
 9
 On March 1, 1992, ITS received closing documents from VCT, none of which contained a closing date. Following discussions with his attorney and accountant, Park decided that ITS would cease negotiating with VCT. On March 18, he informed VCT that ITS was breaking off negotiations and that it would not honor the option agreement, which ITS claimed had expired on February 11. On March 19, 1992, VCT sought to exercise the option. ITS predictably refused to tender, and VCT requested arbitration on the issues of contract duration and breach of the agreement.
 
 
 10
 When ITS refused to submit to arbitration on the grounds that its obligation to do so had expired, VCT petitioned the Mecklenburg County Superior Court to compel arbitration pursuant to 9 U.S.C. § 2 and N.C.Gen.Stat. § 1-567.3. That court granted a temporary restraining order pending its resolution of the arbitration motion which barred ITS from selling its assets outside the regular course of business and forbade any disclosure of trade secrets. Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., No. 92-CVS-4346 (N.C.Super.Ct. Mar. 20, 1992) (show cause order and TRO).
 
 
 11
 Before a preliminary injunction hearing could be held, ITS removed the case to the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. §§ 1441 et seq., asserting diversity jurisdiction under 28 U.S.C. § 1332. In that forum ITS answered VCT's motion to compel arbitration and for injunction, and sought injunctions against arbitration and the revelation of trade secrets. Following a June 19 hearing, the district court denied VCT's motion to compel immediate arbitration of the option duration question and for a preliminary injunction continuing the state court's TRO, granted ITS's motion to enjoin arbitration, and enjoined both parties from disclosing the other's trade secrets pending resolution of the case. Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 793 F.Supp. 664, 667, 669-70 (W.D.N.C.1992). In doing so, the district court first determined that the threshold question of arbitrability was for the court, not the arbitrator. Id. at 667. It then held that the dispute over the duration of the option agreement was not arbitrable, id. at 668, reserving judgment on the substantive question whether there had been a parol extension of the written option agreement. Id. at 669.
 
 
 12
 This appeal by VCT followed.
 
 II
 
 13
 We first consider the district court's denial of VCT's motion to compel immediate arbitration and its grant instead of an injunction barring VCT from pursuing arbitration pending resolution of the disputed substantive issue in the district court.
 
 
 14
 While decisions pertaining to injunctive relief normally are reviewed solely for abuse of discretion in applying the injunction standard, Doran v. Salem Inn, Inc., 422 U.S. 922, 931-32, 95 S.Ct. 2561, 2567-68, 45 L.Ed.2d 648 (1975), we review such a decision de novo where it "rests solely on a premise as to the applicable rule of law, and the facts are established or of no controlling relevance." Thornburgh v. American College of Obstetricians and Gynecologists, 476 U.S. 747, 757, 106 S.Ct. 2169, 2177, 90 L.Ed.2d 779 (1986).
 
 
 15
 That is the situation here, for the district court's decision to grant ITS's motion to enjoin arbitration (and to deny VCT's motion to compel it) rested solely on two legal premises, successively applied: first, that as a matter of law the court, not the arbitrator, should decide the threshold issue of the duration dispute's arbitrability; second, that as a matter of law that substantive dispute was not arbitrable, but should be decided by the court.[2] We therefore review de novo the correctness of these two legal determinations upon which the district court's orders refusing to compel arbitration, but instead enjoining it, were rested.[3]
 
 
 16
 * We first review the district court's legal conclusion that the threshold issue of the arbitrability of the dispute over the option's duration was for it, not the arbitrator.
 
 
 17
 The general rule is that whether particular disputes are arbitrable under a contractual arbitration clause are questions for the court to decide as a matter of contract interpretation. But parties may of course provide by contract for arbitration even of arbitrability issues. AT & T Technologies, Inc. v. Communication Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). An intention to do so, however, is sufficiently at odds with normal practice that the general policy-based, federal presumption in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), is not applied as a rule of contract interpretation to resolve questions of the arbitrability of arbitrability issues themselves. Instead, a "clear and unmistakable" indication of the parties' intent to take this unusual course is required. In effect, the presumption with respect to this issue runs the other way: that except as clearly and unmistakably indicated in their contract, the parties did not intend to commit the very issue of the scope of arbitrability itself to arbitration. AT & T Technologies, 475 U.S. at 649, 106 S.Ct. at 1418; United Steelworkers, 363 U.S. at 583 n. 7, 80 S.Ct. at 1353 n. 7.
 
 
 18
 We need not decide if anything short of a specific, express provision, such as "all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration," would meet this test. It suffices to say that the typical, broad arbitration clause in the option agreement at issue here--which contains nothing approaching such a provision--does not. As the Second Circuit said when confronted with this question in connection with a similarly broad clause in Necchi S.p.A. v. Necchi Sewing Machine Sales Corp., 348 F.2d 693, 696 (2d Cir.1965), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966), "[t]he arbitration provision here is broad, but not that broad." It does not "clearly and unmistakably" commit arbitrability issues to arbitration.
 
 
 19
 We therefore affirm the district court's conclusion that, as a matter of law, the question whether the duration dispute was arbitrable was for the court, not the arbitrator, to decide.
 
 B
 
 20
 This leads to the second question: whether the district court, having correctly decided that it, not the arbitrator, should decide whether the duration dispute was arbitrable, then correctly decided that it was not arbitrable but should also be decided by the court.
 
 
 21
 The question whether a dispute over an agreement's duration is for court or arbitrator theoretically can be approached in two basic ways. It could be thought properly to turn on whether the agreement itself has expired. For if it has, the obligation to arbitrate any dispute arising under it has also expired, since the obligation's source is the agreement's arbitration clause. But to take this approach obviously requires deciding, or coming close to deciding, the very issue of the agreement's duration whose arbitrability is in issue. For good reason, this circular approach has been rejected as one that necessarily compromises decision on the very matter in dispute in the course of deciding who shall decide it. AT & T Technologies, 475 U.S. at 649, 106 S.Ct. at 1418.
 
 
 22
 The other approach--and the proper one--treats the question as one simply of contract interpretation. It asks directly "whether the parties, at the time they entered into the contract, intended that disputes over the duration of the contract would be decided by a court or the arbitrators." National R.R. Passenger Corp. v. Boston & Maine Corp., 850 F.2d 756, 760 (D.C.Cir.1988). This gets directly at the matter, simply applying the fundamental principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers, 363 U.S. at 582, 80 S.Ct. at 1353. And it does so by a process that avoids the problems of circularity and compromise of the decisional process that make the first approach unacceptable.[4]
 
 
 23
 Taking this approach, as did the district court, we agree with that court that an intent to arbitrate disputes over the option agreement's very continuation cannot be inferred from the text of this agreement, including its broad arbitration clause.
 
 
 24
 VCT makes the obvious argument that the reference in that clause to "any dispute aris[ing] between the parties" must, particularly when given the arbitrability presumption's push, be understood to include disputes over contract duration. But we disagree, for two principal reasons.
 
 
 25
 In the first place, it seems only slightly--if at all--less likely that parties would intend in the ordinary course to commit to arbitration disputes about the very existence (whether by origination or termination) of their contractual relationship than that they would intend to commit to arbitration the threshold question of the arbitrability of such disputes. While the general presumption in favor of arbitrability has not been expressly rejected in respect of the former as it has in respect of the latter, see Part II.A., we think it proper to accord it less force in respect of contract duration issues than is appropriate in respect of disputes arising under a contract whose own continuation is unchallenged.
 
 
 26
 In the second place, the broad, non-specific arbitration clause is accompanied in the option agreement by an express termination date provision. There was thus no incipient issue of contract duration in the parties' memorialized agreement, hence no built-in likelihood of dispute over its duration.
 
 
 27
 Taking into account the implications of a broad, non-specific arbitration clause in combination with an express termination date provision, and according proper weight to the general presumption in favor of arbitration when applied to a dispute over the very continuation of contractual obligations, we conclude that an intent to commit that issue to arbitration cannot properly be inferred from this agreement. See National R.R., 850 F.2d at 763 ("[I]f a contract provides that 'all disputes between the parties shall be arbitrated,' but with equal clarity provides that it will expire on a date certain, then any dispute over whether the contract actually expired or was extended by the parties must be decided by the court rather than by the arbitrator.").
 
 
 28
 Contending for a contrary view, VCT advances related arguments that require consideration, though in the end we reject them. They rely on decisions in which procedural objections to the enforceability of particular obligations to arbitrate were held to be arbitrable, see County of Durham v. Richards & Assocs., Inc., 742 F.2d 811, 815 (4th Cir.1984) (limitations); In re Mercury Constr. Corp., 656 F.2d 933, 942 (4th Cir.1981) (en banc), aff'd sub nom., Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (abstention), and on decisions in which voidability defenses to an underlying contract were held to be arbitrable, see Nolde Bros., Inc. v. Local 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300, reh'g denied, 430 U.S. 988, 97 S.Ct. 1689, 52 L.Ed.2d 384 (1977); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).
 
 
 29
 From these decisions, VCT argues that obligations to arbitrate, once made, must be considered perpetually in force independently of the continued existence of their contractual sources, subject only to specific objections or defenses to their enforceability which are themselves arbitrable. On this view, a dispute over the continued existence of the underlying contract is of a piece with procedural objections and voidability defenses, hence is also arbitrable under the principles applied in these cases.
 
 
 30
 We disagree. These decisions certainly stand for the propositions that obligations to arbitrate do not invariably terminate upon termination of the underlying contract's prime obligations, Nolde Bros. and Prima Paint, and that their enforcement may be subject to procedural objections which are themselves arbitrable, Mercury Constr. and County of Durham. But that is as far as they go for purposes of decision in this case. Critically, though they contemplate that obligations to arbitrate may exist independently of underlying prime contractual obligations and survive the latter's termination, they expressly recognize that whether they do survive in a particular case depends upon whether the law can impute such an intention to the parties. Nolde Bros., 430 U.S. at 255, 97 S.Ct. at 1074; Prima Paint, 388 U.S. at 402 & n. 9, 87 S.Ct. at 1805 & n. 9. As indicated, we do not believe that any intention to commit the duration dispute here in issue to arbitration can properly be imputed to these parties, whether or not they may have intended that the obligation to arbitrate, so far as it extended, should survive termination of the option agreement.
 
 
 31
 We affirm the district court's legal conclusion that, as a matter of contract interpretation, the dispute over the option's duration was for it, not the arbitrator, to decide.
 
 III
 
 32
 We turn now to the district court's denial of VCT's request for interim injunctive relief barring ITS from selling its assets outside the normal course of business pending resolution of the duration dispute.[5] We review that ruling for abuse of discretion.
 
 
 33
 We can find no abuse here. The district court properly applied the hardship balancing standard announced in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir.1977), and reiterated in our more recent case, Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir.1991), to determine whether this injunction should issue. This standard requires the trial court to examine four factors: the likelihood of irreparable harm to the movant if the preliminary injunction is denied, the likelihood of harm to the potentially enjoined party if the requested relief is granted, the likelihood that the movant will succeed on the merits, and the public interest. Id. All four factors do not weigh equally, however; the first two dominate. If, in balancing irreparable harm to the movant on denial of the injunction and harm to the potentially enjoined party on granting of it, the balance decidedly favors the movant, an injunction will issue when " 'the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.' " Id. (quoting Blackwelder, 550 F.2d at 195). As the balance tips away from movant, a stronger showing on the merits is required. Rum Creek, 926 F.2d at 359.
 
 
 34
 Here the district judge determined that the harms VCT alleges it will suffer if ITS is sold--loss of distributor agreements, loss of sales, expenses incurred in relocation, injury to reputation, loss of profits, and loss of volume discounts--were not irreparable. His finding that these highly speculative and largely economic injuries did not constitute irreparable harm cannot be said to be clearly erroneous. Nor can his finding that ITS might be driven to insolvency by a preliminary injunction. Having determined that VCT would not suffer irreparable harm from a denial of the injunction, the district judge did not err in declining to consider either the likelihood of success on the merits or the public interest.
 
 
 35
 We therefore affirm the denial of this particular injunctive relief.
 
 IV
 
 36
 In sum, we affirm the district court's decisions refusing to compel arbitration and instead enjoining arbitration of the dispute over the continued existence of the option agreement, and its denial of VCT's motion for injunctive relief pending resolution of the dispute. We therefore remand the case to the district court for further proceedings to resolve that dispute.
 
 
 37
 SO ORDERED.
 
 
 
 [1]
 VCT and AMI are North Carolina corporations with principal places of business there; ROI is comparably situated in New Jersey. ITS is a Tennessee corporation with its principal place of business there, and Park is a resident and citizen of that state. For simplicity's sake, the opinion will refer to appellants and appellees as the singular entities VCT and ITS, respectively, except where individual identities are relevant
 
 
 [2]
 Because the court's decision to enjoin arbitration was thus based solely on these legal conclusions, its failure to make the explicit findings normally required in ruling on requests for preliminary injunctive relief was not error
 
 
 [3]
 Though their opposing arguments are confusing on the point, it may be that both parties have failed consistently to appreciate that the decision under review involved the resolution of two successive arbitrability issues--not a single all-encompassing one. Thus, each seems at times to define the sole issue before the district court as whether the court or the arbitrator should decide the threshold question of the duration dispute's arbitrability, and at others to define it as whether the court or arbitrator should decide the substantive duration dispute. As indicated in text of this opinion, these are two different issues which need not be resolved the same way
 
 
 [4]
 The conceptual difficulties posed by disputes over the arbitrability of contract duration issues are more extensively explored in National R.R., 850 F.2d at 756, 757-60
 
 
 [5]
 This particular interim injunctive relief was originally granted in the state court's TRO, and as there granted was only for the period "pending hearing on the ... motion for preliminary injunction." J.A. at 20. Following removal of the case to the district court, VCT moved in that court for continuation of the relief "pending resolution of the arbitration between the parties." J.A. at 45. Having decided to enjoin the arbitration, the district court addressed the request as if it were for continuation of the state TRO relief "pending outcome of the dispute between the parties," and as such denied it. J.A. at 52
 We review the district court's denial according to that court's interpretation of the relief being sought.
 Neither party challenges that portion of the district court's order enjoining both from disclosing the other's trade secrets. J.A. at 53.