**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROL ANN D. GREGORY,
<u>Plaintiff-Appellant,</u>

v.

No. 98-1840

INTERSTATE/JOHNSON LANE
CORPORATION,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
G. Ross Anderson, Jr., District Judge.
(CA-97-4003-7-13)

Argued: June 7, 1999

Decided: August 31, 1999

Before MURNAGHAN, NIEMEYER, and LUTTIG, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robin Monroe Johnson, WILLOUGHBY & HOEFER,
P.A., Columbia, South Carolina, for Appellant. Elizabeth Herlong
Campbell, NEXSEN, PRUET, JACOBS & POLLARD, L.L.P.,
Columbia, South Carolina, for Appellee. **ON BRIEF:** Mitchell Wil-
loughby, WILLOUGHBY & HOEFER, P.A., Columbia, South Caro-
lina, for Appellant. Susan P. McWilliams, NEXSEN, PRUET,
JACOBS & POLLARD, L.L.P., Columbia, South Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The specific issue in this factually complicated case is whether the district court or an arbitration panel should decide whether the plaintiff agreed to arbitrate her dispute. The district court held that the arbitrator should be able to make that decision. We reverse.

I.

Carol Ann D. Gregory ("Mrs. Gregory") sued Interstate/Johnson Lane Corporation ("IJL") under two federal theories and seven state theories based upon IJL's handling of a joint securities account in her name and her husband's name. The federal claims were asserted under 15 U.S.C.A. § 78j(b) (West 1997) for Rule 10b-5 fraud, see 17 C.F.R. § 240.10b-5 (1998), and under a civil RICO theory, see 18 U.S.C.A. § 1964(c) (West 1984 & Supp. 1999). The state law claims were for fraud, constructive fraud, and fraudulent concealment; unauthorized trading and conversion; breach of fiduciary duty; churning ($57,000 in commissions during a ten month period); negligence; violation of South Carolina securities laws, S.C. Code Ann. §§ 35-1-1210, -1490, and -1500 (Law Co-op 1987 & Supp. 1998); and violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 et seq. (Law Co-op 1985 & Supp. 1998).

Mrs. Gregory is a fifty-one year old, disabled homemaker and resident of Spartanburg County, South Carolina. She is and at all relevant times was the wife of Robert Love Gregory ("Mr. Gregory"). IJL is a regional broker-dealer with its headquarters in Charlotte, North Carolina and retail branch offices located primarily in North Carolina, South Carolina, Georgia, and Virginia. According to IJL, in or about November 1994, Mr. Gregory called Patrick T. McShea ("McShea") to discuss opening a joint securities account with IJL. Mr. Gregory reportedly told McShea that he expected to receive stock from a buy-

2

out of his corporation and he wished to place that stock in the joint account so that he could trade on the securities markets.

On or about February 15, 1995, IJL opened a joint account with right of survivorship for Mrs. Gregory and her husband, based upon account opening documents which contained Mr. Gregory's signature[1] and a signature purporting to be Mrs. Gregory's. Although Mr. and Mrs. Gregory are still married, Mr. Gregory is not a party to the action and it has not been alleged that Mr. Gregory's signature was forged. Under the joint account arrangement, either owner of the account could authorize trades, issue instructions, and receive money made payable to either owner. Confirmations, notices, statements of account, and communications dealing with the joint account could be sent or given by IJL to either owner.

The Customer Agreements, consisting of a "Cash Account" agreement and a "Key Account" agreement (the "Agreements"), for the joint account contained a provision stating that any controversy between IJL and the Gregorys must be resolved by arbitration:

> It is agreed that any controversy between us arising out of or relating to this Agreement, transactions between us, or any other matter shall be submitted to arbitration before and [in] accordance with the rules of [various organizations], as I may elect by sending notice of such election to you . . . . In the event that I do not make such election within ten (10) days after receipt of notification from you requesting such election, I authorize you to make such election on my behalf.

(J.A. at 42. See also J.A. at 46.)

_____

[1] Mrs. Gregory argues that the district court erred in concluding that Mr. Gregory's signature was authentic. This conclusion was not clearly erroneous. At oral argument, counsel for Mrs. Gregory admitted that Mr. Gregory was the first to visit their law offices. Further, Mrs. Gregory is still married to and living with Mr. Gregory and Mrs. Gregory has never alleged that Mr. Gregory's signature was forged (i.e., the issue is not in dispute).

3

Based on this arbitration clause, IJL filed a motion to dismiss, or in the alternative, to stay pending mandatory arbitration. IJL argued that under the federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 1-16 (West 1999), the district court was required to dismiss the action or at least stay proceedings on it in accordance with the contractual arbitration clause.

In response to this motion, Mrs. Gregory claimed that her signatures on the Agreements were forgeries. Mrs. Gregory avowed that the first time she ever saw the Agreements was when her attorneys showed her facsimile copies produced by IJL after she filed her complaint in the district court. Further, Mrs. Gregory provided the opinion of Mr. Joseph H. Bowers, an experienced handwriting expert with a background in the Federal Bureau of Investigation. Mr. Bowers opined that, to a reasonable degree of certainty, both of the Mrs. Gregory signatures on the Agreements were forgeries.

In addition to asserting that she had no knowledge of the Agreements, that she did not sign the Agreements, and that her alleged signatures on the documents are forgeries, Mrs. Gregory stated under oath that she never gave anyone the authority to sign her name or to execute the Agreements on her behalf. Mrs. Gregory further stated under oath that she did not know of, and had never met or spoken with, McShea, or, to the best of her knowledge, any other employee or representative of IJL regarding the opening of a securities account, her investment objectives, the trading activity in the account, or the risks associated with the way the account was being traded or managed.

IJL disputed most of Mrs. Gregory's contentions. IJL did not concede that Mrs. Gregory's signatures were forgeries or that no one else had the authority to sign or execute the Agreements for Mrs. Gregory. Further, McShea affied that he spoke with Mrs. Gregory by telephone and warned her about certain risks associated with the account.

IJL maintains that throughout the time the joint account was open, from February, 1995 through November, 1995, all of the trading in the account was made at the direction of Mr. Gregory. There were over two hundred trades during that period. IJL asserts that a confirmation for each of those trades was sent in both of the Gregorys'

4

names to their home. IJL argued that Mrs. Gregory was bound by virtue of Mr. Gregory's signature to submit all disputes arising out of the account to arbitration.

On March 25, 1998, the district court dismissed Mrs. Gregory's case outright. The court reasoned, in part:

> The arbitration clause to which at least Mr. Gregory agreed encompasses all disputes relating to the account. Therefore, any dispute relating to the account, whether it be raised by Mrs. Gregory or Mr. Gregory must be resolved in arbitration. Finally, it should be noted that Mrs. Gregory can raise all of her arguments regarding forgery in arbitration. If the arbitrators conclude that she is not bound by the arbitration clause, they can so find and she will be allowed to proceed with her claim in this Court.

(J.A. 102-03.) Mrs. Gregory appeals from this dismissal.[2]

II.

This Court reviews a district court's decision as to arbitrability and who decides arbitrability under the FAA de novo . See Hooters of America, Inc. v. Phillips, 173 F.3d 933, 937-38 (4th Cir. 1999) (quoting AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 651 (1986), and citing A.T. Massey Coal Co., Inc. v. International Union, United Mine Workers of America, 799 F.2d 142, 146 (4th Cir. 1986)); Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 117 (4th Cir. 1993); McMahan Securities Co. v. Forum Capital Markets, 35 F.3d 82, 86 (2d Cir. 1994).

The Supreme Court recently discussed how every arbitration case involves three layers of questions. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995). First, the parties disagree about the substantive merits of the underlying dispute (the "merits issue"). Second, "they disagree about whether they agreed to arbitrate the

_____

[2] IJL filed a last minute motion to dismiss the appeal. We deny that motion.

merits. That disagreement is about the <u>arbitrability</u> of the dispute [the "arbitrability issue"]." <u>Kaplan</u>, 514 U.S. at 942 (emphasis in original). Third, "they disagree about who should have the primary power to decide the second matter. Does that power belong primarily to the arbitrators . . . or to the court [the "jurisdictional issue"] . . .?" <u>Id.</u> (emphasis in original removed). The only question facing the Court in the case <u>sub judice</u> is the third question-- whether a court or an arbitrator should determine if Mrs. Gregory must arbitrate her dispute because she is bound by the Agreements' arbitration provisions.

The parties have made the case more complicated than it needs to be by raising issues which we need not address at this stage. First, if Mrs. Gregory did not sign the Agreements, is she bound by them because her husband signed them? Second, if Mrs. Gregory did not sign the Agreements, is she nevertheless bound by them because she ratified them by enjoying their "benefits" for almost a year? Third, if Mrs. Gregory did not sign the Agreements, what causes of action may she raise -- does she have standing to raise a claim based upon the handling of the account?**3** These questions go to the arbitrability issue or the merits issue, rather than to the initial question, and the only question facing this Court -- who has jurisdiction to decide those questions. We therefore decline to address them at this point. On remand, however, the district court will have to address at least the first two questions above.

Mrs. Gregory's complaint highlights the tension between two competing lines of authority under the FAA. On the one hand, the Supreme Court has held that arbitration provisions should be broadly construed so that arbitrators may decide all issues encompassed by an arbitration provision. This doctrine has been extended to allow arbitrators to decide issues of fraud in the inducement, mutual mistake, unconscionability, and confusion -- issues that go to the enforceability of the contract as a whole. <u>See infra</u> section II(B).

_____

**3** Mrs. Gregory also asserts that the arbitration fora provided by the Agreements are biased and inadequate to satisfy due process and fairness concerns. <u>See Commonwealth Coatings Corp. v. Continental Cas. Co.</u>, 393 U.S. 145, 148 (1968); <u>Hooters of America, Inc. v. Phillips</u>, 173 F.3d 933, 938-40 (4th Cir. 1999). The arbitral fora at issue in this case are reputable and widely used. Mrs. Gregory has provided no more than unsupported allegations to support her argument, and we therefore reject it.

6

On the other hand, the Supreme Court is cognizant of the fact that arbitration may only be compelled where the parties have agreed to arbitrate. The Supreme Court has held that as a general rule the court, and not the arbitrator, must decide whether the parties have agreed that an issue is or is not subject to arbitration. See infra section II(C).

We hold that the latter line of authority must prevail in this case. The first principle of arbitration law is that a party cannot be compelled to arbitrate a dispute unless that party has agreed to arbitration. See AT & T Techs. v. Communications Workers of Am., 475 U.S. 643, 648 (1986). In this case, Mrs. Gregory contends that she never agreed to arbitration; in fact, that she never agreed to any contract. She has the right, then, to have a district court, rather than an arbitrator, decide if she has agreed to arbitrate her claim.

A.

The FAA establishes a federal policy favoring the enforcement of written agreements to arbitrate certain disputes. The FAA provides that written arbitration provisions in any contract involving interstate or international commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The FAA further requires courts to stay proceedings if the issues presented are covered by an arbitration agreement, and to compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. See 9 U.S.C.A. §§ 3,**4** 4.**5**

_____

**4** 9 U.S.C.A. § 3 reads in pertinent part: "[When a suit is brought] upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action . . . ."
**5** 9 U.S.C.A. § 4 reads in pertinent part: "[A party may request a court for an order compelling arbitration.] The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration . . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."

Courts applying the FAA have articulated a "liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). <u>See also Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 55 (1995); <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 24 (1991). The Supreme Court has urged a broad reading of arbitration provisions in contracts, creating a presumption in favor of arbitrability for merits-based disputes:

> As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

<u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 24-25. <u>See also O'Neil v. Hilton Head Hosp.</u>, 115 F.3d 272, 273-74 (4th Cir. 1997).

B.

The broad policy in favor of arbitration is illustrated by the Supreme Court's decision in <u>Prima Paint Corp. v. Flood & Conklin Manufacturing Co.</u>, 388 U.S. 395 (1967). In that case, the Supreme Court held that a claim of fraud in the inducement of the contract was arbitrable under a broad arbitration clause. The Court held that § 4 of the FAA, and by implication § 3 of the FAA, limit a court's jurisdiction to challenges to the arbitration clause itself:

> Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the "making" of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . . We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

<u>Id.</u> at 403-04.

8

Prima Paint therefore allows a federal court to consider a claim of fraud in the inducement of a contract "only if the fraud relates specifically to the arbitration clause itself and not to the contract generally." Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1140 (9th Cir. 1991). Courts have extended the rationale of Prima Paint beyond claims of fraud in the inducement. See, e.g., Jeske v. Brooks, 875 F.2d 71, 75 (4th Cir. 1989) (allegations of fraud, lack of consideration, overreaching, and unconscionability go to entire agreement, not to arbitration provision); Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 813-14 (4th Cir. 1989) (fraud in the inducement); Coleman v. Prudential-Bache Sec., Inc., 802 F.2d 1350, 1352 (11th Cir. 1986) (per curiam) (contract of adhesion); Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co., 774 F.2d 524, 529 (1st Cir. 1985) (frustration of purpose and mutual mistake); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391, 398 (5th Cir. Unit B Feb. 1981) (duress and unconscionability); Hall v. Prudential-Bache Sec., Inc., 662 F. Supp. 468, 471 n.1 (C.D. Cal. 1987) (duress, unconscionability, coercion, and confusion in signing).

The district court below held, and IJL argues, that Prima Paint and the strong policy in favor of enforcing and broadly construing arbitration agreements, require that Mrs. Gregory's claims be sent to the arbitrator. Because Mrs. Gregory alleges fraud (forgery) that goes to the existence of the entirety of each agreement rather than specifically to the arbitration provisions, and because the arbitration clauses contain very broad language, the arbitrator must be allowed to decide if Mrs. Gregory is bound by the Agreements.

The district court and IJL have not adequately considered the "first principle" of arbitration law.

C.

While there is a federal policy favoring the enforcement and broad interpretation of arbitration agreements, "parties cannot be forced to submit to arbitration if they have not agreed to do so." Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) (citing Volt Info. Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 478 (1989)). "[T]he first task of a court asked to compel arbitration

of a dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). This is so because "[t]he first principle . . . is that `arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT & T Techs., 475 U.S. at 648 (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). See also Kaplan, 514 U.S. at 943 ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration."); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997) ("Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.").

A number of consequences flow from this "first principle" of arbitration law. First, "the question of arbitrability -- whether a [particular agreement] creates a duty for the parties to arbitrate the particular grievance -- is undeniably an issue for judicial determination[ ] [u]nless the parties clearly and unmistakably provide otherwise . . . ." AT & T Techs., 475 U.S. at 649. See also Virginia Carolina Tools, 984 F.2d at 117. This presumption with regard to the jurisdictional issue is the reverse of the presumption that applies to the arbitrability of other types of disputes. As explained by the Court in Kaplan:

> [T]he law treats silence or ambiguity about the question "who (primarily) should decide arbitrability" [i.e., the jurisdictional issue] differently from the way it treats silence or ambiguity about the question "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement" [i.e., the arbitrability issue] . . . .
>
> But, this difference in treatment is understandable. The latter question arises when the parties have a contract that provides for arbitration of some issues. . . . [G]iven the law's permissive policies in respect to arbitration . . . one can understand why the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter. . . . On the other hand, the former question. . . is rather arcane. A party often might not focus upon that ques-

10

tion or upon the significance of having arbitrators decide the scope of their own powers. . . . And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why the courts might hesitate to interpret silence or ambiguity on the [former] point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

Kaplan, 514 U.S. at 945. This logic may also be found in the rule that an arbitrator may not determine his own jurisdiction. See AT & T Techs., 475 U.S. at 651; Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos, 25 F.3d 223, 226 (4th Cir. 1994).

Second, because arbitrability is dependent upon the agreement of both parties, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."[6] Kaplan, 514 U.S. at 944. That is, in fulfilling their jurisdictional function, courts generally should apply state contract law principles to determine the arbitrability issue.

The third proposition which flows from the first principle of arbitration law is that if the dispute is over the very existence of the agreement to arbitrate, a district court, and not the arbitrator, must decide if the arbitration clause (indeed, the entire agreement) is enforceable against the parties. See Chastain, 957 F.2d at 854; 9 U.S.C.A. §§ 2-4 (presuming existence of a contract or "agreement"). See also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964) (stating

_____

[6] In her reply brief, Mrs. Gregory argues that the just-quoted statement from Kaplan sub silentio over-ruled the holding of Prima Paint. See also Ex parte Williams, 686 So.2d 1110, 1112 (Ala. 1996) (Houston, J., concurring in the result) (stating that Kaplan over-ruled Prima Paint). We acknowledge that the approaches of the two cases are in some tension. We note, however, that Prima Paint was not even cited in Kaplan. As discussed below, we believe that Prima Paint and Kaplan can be reconciled because the former dealt with the arbitrability issue, while the latter dealt primarily with the jurisdictional issue.

11

that "a compulsory submission to arbitration cannot precede judicial determination" that there is a binding and valid contract creating a duty to arbitrate), quoted in AT & T Techs., 475 U.S. at 649; Virginia Carolina Tools, 984 F.2d at 118 (holding that dispute about the "very existence" of the contractual relationship was to be decided by the district court); Glass v. Kidder Peabody & Co., Inc., 114 F.3d 446, 453-454 (4th Cir. 1997) (stating that issues of "substantive arbitrability," including whether "a valid agreement to arbitrate exists between the parties" are for the court to decide).

D.

The resolution of the instant case depends upon whether one views it as being controlled by Prima Paint or by AT & T Technologies and Kaplan.[7]

Other courts have taken the approach followed by the district court. The district court relied heavily upon a South Carolina Supreme Court case, South Carolina Public Service Authority v. Great Western Coal (Kentucky), Inc., 437 S.E.2d 22 (S.C. 1993). In that case, the South Carolina Supreme Court held that Prima Paint could not be limited to cases of fraud-in-the-inducement, but should apply as well to cases of fraud in the factum (i.e., claims of ineffective assent to the contract). Therefore, arbitration must be compelled unless the challenge to the contract, regardless of the nature of the challenge, goes to the arbitration clause itself, rather than the contract as a whole. See also Hall v. Shearson Lehman Hutton, Inc., 708 F. Supp. 711, 712-13 (D. Md. 1989) (applying Prima Paint to case in which plaintiff claimed that he never signed the agreement containing the arbitration clause).

We find error in the district court's approach. At least three courts have held that when a party reasonably claims that it never signed the

_____

**7** **Kaplan** involved a slightly different question -- the standard of review a court should use when reviewing an arbitrator's decision on arbitrability. Kaplan can not be limited to the factual circumstance with which the court was faced in that case. The clear import of the language and logic in Kaplan is that, when given the opportunity, a district court should decide the threshold arbitrability issue before sending a case to an arbitration panel. See generally Kaplan, 514 U.S. 938.

12

agreement containing the arbitration clause, the court, not an arbitrator, must determine if the party is bound by it. See Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851 (11th Cir. 1992); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc. , 925 F.2d 1136 (9th Cir. 1991); Monk v. Perdue Farms, Inc., 12 F. Supp.2d 508 (D. Md. 1998). In each of these cases, the court was faced with an agreement containing an arbitration provision and a party who claimed that the signature on the agreement did not bind him or her. In each of the cases the opposing party, relying upon Prima Paint, argued that the court must refer the issue of whether the party was bound by the agreement to arbitrate to the arbitrator. Each court held, however, that Prima Paint was inapplicable because the validity, indeed the very existence, of the agreement to arbitrate was at issue. See Chastain, 957 F.2d at 854; Three Valleys, 925 F.2d at 1140; Monk, 12 F. Supp.2d at 509. The court in Chastain explained at some length:

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. See T & R Enters. v. Continental Grain Co., 613 F.2d 1272, 1278 (5th Cir. 1980). Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general. See Prima Paint, 388 U.S. at 403-04 . . . .

> The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, including the existence of an agreement to arbitrate. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.

13

Chastain, 957 F.2d at 854. The court in Chastain further justified its holding by reference to the FAA -- when the party alleges that she never signed the agreement, "the making of the arbitration agreement . . . [is] in issue" under 9 U.S.C.A. § 4.**8**

Prima Paint and the cases that extended it and relied upon it are all distinguishable for two reasons. First, they all include a key trigger compelling arbitration -- "the existence of a presumptively valid arbitration agreement contained within a contract signed by the parties -- [which] is entirely absent in this case." Chastain, 957 F.2d at 855. In those cases, the challenges sought "to avoid or rescind a contract . . . [they were not] challenges going to the very existence of a contract that a party claims never to have agreed to." Three Valleys, 925 F.2d at 1140 (emphases in original).

Second, Prima Paint and its progeny all deal with a separate issue -- the arbitrability issue rather than the jurisdictional issue involved here. In fact, in each of those cases the court did exercise control over the jurisdictional issue. The Prima Paint Court did not hold that the arbitrator could decide whether or not the fraud in the inducement claim was arbitrable, it held on its own that the claim was arbitrable. See Prima Paint, 388 U.S. at 402 (clearly framing the issue as one of arbitrability: "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators"). The jurisdictional issue was not even in dispute in Prima Paint. Neither party argued that the arbitrator, not the court, should decide whether the issue was arbitrable. It

_____

**8** The district court held that the Eleventh Circuit's reliance on 9 U.S.C.A. § 4 was misplaced since § 4 only applies when there is a suit seeking to compel arbitration and not when the defendant in a suit in district court seeks to dismiss or stay pending arbitration. We reject this position as inconsistent with Supreme Court and Fourth Circuit precedent. See Prima Paint, 388 U.S. at 404 (applying standards in 9 U.S.C.A. § 4 to case brought under 9 U.S.C.A. § 3, stating, "it is inconceivable that Congress intended the rule to differ depending upon which party to the arbitration agreement first invokes the assistance of a federal court."); Jeske v. Brooks, 875 F.2d 71, 73 n.3 (4th Cir. 1989) ("In practical effect, no difference exists between a stay pending arbitration [§ 3] and an order compelling arbitration [§ 4].").

14

was taken for granted that the court would decide that question. See also Peoples Security, 867 F.2d at 812 ("Whether a contract's arbitration clause allows the arbitration of a certain dispute is for a court to determine.").

In the case at bar, the dispute over the forgery is not a dispute over the arbitrability of a merits-based issue, rather it is a dispute over an issue which itself goes to arbitrability. If Mrs. Gregory's signatures are forgeries and she is not otherwise bound by the Agreements, then the arbitrability issue must be resolved in the negative -- she has not agreed to arbitrate anything and her substantive claims are not arbitrable. If she is bound by the Agreements, then the arbitrability issue must be resolved in the positive -- her claims are subject to arbitration. Either way, the forgery dispute goes only to the question of arbitrability. Under the first principle of arbitration law and Kaplan, a court must resolve questions of arbitrability. See also John Wiley & Sons, Inc. v. Livingston, 376 U.S. at 547 ("a compulsory submission to arbitration cannot precede judicial determination" that there exists a binding and valid contract creating a duty to arbitrate), quoted in AT & T Techs., 475 U.S. at 649; Virginia Carolina Tools, 984 F.2d at 118 (holding that dispute about the "very existence" of the contractual relationship was to be decided by the district court); Glass v. Kidder Peabody & Co., Inc., 114 F.3d at 453-454 (stating that whether "a valid agreement to arbitrate exists between the parties" is for the court to decide).

Therefore, we hold that the district court must first pass on the question of whether Mrs. Gregory is bound by the Customer Agreements. If the district court makes this finding in the affirmative, then, and only then, Prima Paint and the FAA require the district court to send Mrs. Gregory's complaint to arbitration. If the district court makes the finding in the negative, then the district court will have to address the procedural and substantive issues of whether Mrs. Gregory must join her husband, whether she has standing to raise any of the claims, and whether any of these are meritorious.

Accordingly, the case is reversed and remanded to determine whether Mrs. Gregory signed or was otherwise bound by the agreement to arbitrate.

REVERSED AND REMANDED

15